Filed 8/5/19

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Petitioner,<br><br>   v.<br><br>THE SUPERIOR COURT OF KINGS COUNTY,<br><br>  Respondent;<br><br>I.R.,<br><br>  Real Party in Interest. | F078893<br><br>(Super. Ct. No. 19JQ-0003)<br><br>**OPINION** |

ORIGINAL PROCEEDINGS; petition for writ of prohibition and/or mandate. Donna L. Tarter, Judge.

Keith Fagundes, District Attorney, and James P.M. Bonnie, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Woodrow Edgar Nichols, Jr., for Real Party in Interest.

-ooOoo-

**SEE DISSENTING OPINION**

Senate Bill No. 1391, enacted by the Legislature in 2018 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1, eff. Jan. 1, 2019) (Senate Bill No. 1391), eliminated prosecutors' ability to seek transfer of 14- and 15-year-olds from juvenile court to criminal (adult) court, except where such a minor is alleged to have committed a specified serious offense and is not apprehended prior to the end of juvenile court jurisdiction. (Welf. & Inst. Code, § 707, subds. (a)(1), (2) & (b).)[1]

Recently, in *People v. Superior Court (T.D.)* (F078697, Aug. 5, 2019) ___ Cal.App.5th ___, ___, ___ [2019 ___ Cal.App. LEXIS ___, *___, *___] (slip opn. at pp. 2, 19) (*T.D.*), we held that Senate Bill No. 1391 validly amended Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the Act). The Act had permitted such transfer, but only with juvenile court approval.[2] For the reasons stated in *T.D.*, we reject the claim of petitioner, the District Attorney of Kings County (the District Attorney), that Senate Bill No. 1391 unconstitutionally amended Proposition 57. We also address issues not before us in *T.D.* We hold: (1) Senate Bill No. 1391 is not an unconstitutional amendment of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998 (Proposition 21); (2) Senate Bill No. 1391 is not unconstitutionally vague; (3) Senate Bill No. 1391 applies retroactively; and (4) the murder charge against real party in interest I.R. (I.R.) allegedly committed when he was

---

**1**     Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

**2**     "The juvenile court and the criminal court are divisions of the superior court, which has subject matter jurisdiction over criminal matters and civil matters, including juvenile proceedings. (See Cal. Const., art. VI, § 10.) When exercising the jurisdiction conferred by the juvenile court law, the superior court is designated as the juvenile court. (Welf. & Inst. Code, § 245.)" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548, fn. 3 (*Manduley*).) Accordingly, when we refer to the juvenile court or the criminal (adult) court, we are referring to the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions. (See *In re Harris* (1993) 5 Cal.4th 813, 837.)

2.

age 15 cannot be transferred to criminal court based on a separate felony offense he allegedly committed when he was age 17. Accordingly, we deny the petition for writ of prohibition and/or mandate.

## **PROCEDURAL HISTORY[3]**

On November 20, 2014, Roman Aguayo was stabbed to death. Six days later, in Kings County Superior Court case No. 14CM-4797A, the District Attorney directly charged I.R., in criminal court, with murder committed in association with or for the benefit of a criminal street gang (Pen. Code, §§ 186.22, subd. (b), 187, subd. (a)) and active participation in a criminal street gang (*id*., § 186.22, subd. (a)).[4] I.R., who was 15 years old on the date of the homicide, was held to answer on those charges on February 4, 2015, following a preliminary hearing.

On November 8, 2016, voters enacted Proposition 57. It went into effect the next day. (See Cal. Const., art. II, § 10, former subd. (a).) The Act eliminated prosecutors' ability to file charges against juveniles directly in criminal court. Certain categories of minors — 16- and 17-year-olds who violated any felony criminal statute, and 14- and 15-year-olds who committed enumerated serious offenses, including murder — could still be tried in criminal court, " 'but only after a juvenile court judge conduct[ed] a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor [could] be rehabilitated. [Citation.]' [Citation.]" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305-306 (*Lara*); see § 707, former subds. (a), (b).) The Act further eliminated the presumption that a minor alleged to have committed certain specified serious offenses was not a fit

---

**3** Not all of the documents necessary to a complete procedural history have been submitted to this court. (See Cal. Rules of Court, rule 8.486(b)(1)(C).) Since the parties are in basic agreement concerning the timeline of the case, however, we derive portions of our recitation from their pleadings.

**4** Further references to case numbers are to the Kings County Superior Court.

3.

and proper subject to be dealt with under the juvenile court law. (See § 707, former subd. (c).) As a result of Proposition 57's enactment, criminal proceedings in case No. 14CM-4797A were suspended, and the case was certified to juvenile court, pursuant to section 604.

On December 12, 2016, the District Attorney filed a juvenile wardship petition (§ 602) in case No. 16JQ-0087. Count 1 alleged a violation of Penal Code section 187, subdivision (a) for the murder of Roman Aguayo, plus a gang-murder special circumstance (*id*., § 190.2, subd. (a)(22)) and a gang enhancement (*id*., § 186.22, subd. (b)(1)(C)). Count 2 alleged a violation of Penal Code section 186.22, subdivision (a) (active participation in a criminal street gang), committed on the same date as the murder. Count 3 alleged a violation of Penal Code section 245, subdivision (a)(4) (assault by means of force likely to produce great bodily injury), together with a gang enhancement (*id*., § 186.22, subd. (b)(1)(A)), arising out of an assault I.R. allegedly committed in juvenile hall on November 20, 2016, when he was 17 years old.

At the District Attorney's request, and following a hearing pursuant to section 707, former subdivision (a), I.R. was transferred to criminal court on all counts. Criminal proceedings were reinstated in case No. 14CM-4797A, and a criminal complaint was filed in case No. 17CM0680, charging the assault and gang enhancement that had been alleged as count 3 in case No. 16JQ-0087. On April 26, 2017, I.R. was held to answer in case No. 17CM0680.

On October 4, 2017, the jury deadlocked on the murder charge in case No. 14CM-4797A. On October 12, 2018, at or around the outset of retrial, I.R. moved to be returned to juvenile court, based on the criminal court's lack of jurisdiction due to the passage and signing by Governor Edmund G. Brown, Jr., of Senate Bill No. 1391. The motion was denied on October 16, 2018, because the new law was not yet in effect.

On October 22, 2018, jury trial in criminal court was reset to January 7, 2019, after insufficient prospective jurors were summoned to permit selection of a jury. On

4.

January 7, 2019, I.R. asked the court to rehear his motion to dismiss the case due to lack of jurisdiction. The court granted the rehearing request and dismissed the case.

That same day, the District Attorney filed a juvenile wardship petition (§ 602) in case No. 19JQ-0003, alleging I.R. committed murder with a gang-murder special circumstance and gang enhancement (Pen. Code, §§ 186.22, subd. (b), 187, subd. (a), 190.2, subd. (a)(22); count I), and was an active participant in a criminal street gang (*id.*, § 186.22, subd. (a); count II).[5] The District Attorney requested that I.R. be transferred to criminal court pursuant to section 707, subdivision (a).[6] I.R. opposed the transfer request on the ground Senate Bill No. 1391, which had since taken effect, bars a minor who was 15 years old at the time of the alleged offense from being tried in adult court. The District Attorney argued Senate Bill No. 1391 is unconstitutional and does not apply retroactively.

A hearing on the transfer request was held on February 14, 2019. The court ruled that because I.R. was 15 years old at the time of the alleged murder and was apprehended before the expiration of juvenile court jurisdiction, the court lacked jurisdiction to transfer him to criminal court. Accordingly, it denied the District Attorney's transfer motion and set the matter for a jurisdictional hearing.

The District Attorney petitioned this court for a writ of prohibition and/or mandate, making the same arguments he made below. We stayed the juvenile court proceedings and issued an order to show cause.

---

**5** It is apparent these are the charges arising out of the Roman Aguayo homicide that took place in 2014. The petition erroneously alleges both counts occurred on or about November 20, 2016.

**6** It is unclear how this request was made. In his petition for writ of prohibition and/or mandate, the District Attorney implies the request was made as part of the wardship petition. Although page 2 of the wardship petition contains a box that can be checked if a transfer hearing is being requested, the box in I.R.'s wardship petition is unchecked.

## DISCUSSION

The District Attorney raises a number of challenges to Senate Bill No. 1391. The first is that it is unconstitutional "because it changes Proposition 57's provision that a juvenile judge must determine if a juvenile should be prosecuted in criminal court; [Senate Bill No.] 1391 is inconsistent with and does not further the voter[s'] intent in passing Proposition 57." (Some capitalization & boldface omitted.) As previously stated, we rejected this claim in *T.D.*, *supra*, ___ Cal.App.5th at pages ___-___ [2019 Cal.App. LEXIS ___, *___-*___] (slip opn. pp. 7-19), and we find no reason to revisit our analysis and conclusion in that case. Accordingly, we turn to the District Attorney's remaining contentions.[7]

## I

### Senate Bill No. 1391 is not an unconstitutional amendment of Proposition 21.

Proposition 21 was approved by voters at the March 7, 2000 Primary Election. "Proposition 21 revised the juvenile court law to broaden the circumstances in which minors 14 years of age and older [could] be prosecuted in the criminal division of the superior court, rather than in juvenile court." (*Manduley*, *supra*, 27 Cal.4th at p. 549.) In some instances — such as special circumstance murder where the minor allegedly personally killed the victim — it mandated such prosecution. (§§ 602, former subd. (b), 707, former subd. (d); see *Lara*, *supra*, 4 Cal.5th at p. 305.)

An uncodified section of Proposition 21 provides: "The provisions of this measure shall not be amended by the Legislature except by a statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership of each house concurring, or by a statute that becomes effective only when approved by the voters." (Ballot Pamp., Primary Elec. (Mar. 7, 2000) text of Prop. 21, § 39, p. 131.) Accordingly,

---

[7] Counsel for I.R. has not responded to the remaining claims. The District Attorney does not argue we should deem the failure to respond to be a concession, and we would decline to do so in any event.

the Legislature may amend Proposition 21's statutory provisions without voter approval only by a two-thirds vote of each house. (See Cal. Const., art. II, § 10, subd. (c); *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 568; see also *In re G.Y.* (2015) 234 Cal.App.4th 1196, 1206, fn. 1 (conc. opn. of Bamattre-Manoukian, J.).)

The District Attorney says Senate Bill No. 1391 is unconstitutional because it amended Proposition 21 without the requisite two-thirds vote of each house. To the contrary, the provisions of Proposition 21 relating to the prosecution of 14- and 15-year-olds were repealed by Proposition 57, which eliminated Proposition 21's direct-filing procedure. (*People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 1004-1005; see *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 710-711.)

The District Attorney argues Proposition 57 *modified* Proposition 21 (which, he agrees, was constitutionally allowable) by eliminating the ability of prosecutors to directly file charges against juveniles in criminal court, and by altering the factors to be considered in transferring a juvenile to adult court. He says, however, that Proposition 57 did not eliminate the juvenile court's power to transfer 14- and 15-year-olds to criminal court. This authority to transfer 14- and 15-year-olds was not enacted as part of Proposition 21, however, but rather became law on January 1, 1995, as the result of Assembly Bill No. 560. (§ 707, former subds. (d), (e), as amended by Stats. 1994, ch. 453, § 9.5.) The question is whether Senate Bill No. 1391 unconstitutionally amends Proposition 57, not Proposition 21. As we held in *T.D.*, it does not.

**II**

**Senate Bill No. 1391 is not unconstitutionally vague.**

The District Attorney next contends Senate Bill No. 1391 is unconstitutionally vague, because it rewrites section 707, subdivision (a) to make it unclear to victims, defendants, the police, and prosecutors when a 14- or 15-year-old can be tried in criminal court. Specifically, he points to section 707, subdivision (a)(2), which now provides, in pertinent part: "In any case in which an individual is alleged to be a person described in

Section 602 by reason of the violation, when he or she was 14 or 15 years of age, of any offense listed in subdivision (b), but was not apprehended prior to the end of juvenile court jurisdiction, the district attorney or other appropriate prosecuting officer may make a motion to transfer the individual from juvenile court to a court of criminal jurisdiction." The District Attorney argues that when section 707, subdivision (a)(2) is read in conjunction with sections 607 (concerning the retention of and discharge from juvenile court jurisdiction) and 663 (concerning when an arrest warrant can be issued for a minor), it "creates confusing law and encourages arbitrary and discriminatory enforcement." This is so, he says, because 14- and 15-year-olds are unlikely to understand the "vast difference in liability" they will face if apprehended immediately versus if they abscond until after the expiration of juvenile court jurisdiction, and law enforcement "may be encouraged not to solve crimes or not to catch fugitives because a minor's liability will be greater, if law enforcement waits until the minor is no longer eligible for juvenile court jurisdiction."

" 'The rule is well established . . . that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations.' [Citation.]" (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1095.) The District Attorney does not dispute that I.R. was apprehended within days of the homicide, well before juvenile court jurisdiction expired. Thus, the District Attorney is asking us to consider the question of constitutionality with reference to hypothetical situations, without explaining why we should do so or how he has standing to raise the issue. Accordingly, we reject his claim.

We also reject his claim on the merits. "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may

authorize and even encourage arbitrary and discriminatory enforcement.  [Citation.]" (*City of Chicago v. Morales* (1999) 527 U.S. 41, 56.)

We turn first to the "fair notice" prong.  "It is a fundamental tenet of due process that '[no] one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'  [Citation.]  A criminal statute is therefore invalid if it 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden.'  [Citations.]  So too, vague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute.  [Citations.]"  (*United States v. Batchelder* (1979) 442 U.S. 114, 123.)  However, " '[i]t is impossible, given the complexities of our language and the variability of human conduct, to achieve perfect clarity in criminal statutes.  Reasonable specificity exists if the statutory language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understandings and practices."  [Citations.]' [Citation.]  ' "[S]tatutes are not automatically invalidated as impermissibly vague simply because difficulty is found in determining whether certain marginal offenses fall within their language.  [Citation.]" [Citation.]' [Citation.]"  (*People v. Hagedorn* (2005) 127 Cal.App.4th 734, 746.)  " 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.  Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears.'  [Citation.]"  (*People v. Garcia* (2014) 230 Cal.App.4th 763, 768.)

Section 707, subdivision (a)(2), as amended by Senate Bill No. 1391, meets these requirements.  A 14- or 15-year-old who commits an offense listed in section 707, subdivision (b), but who is not apprehended prior to the end of juvenile court jurisdiction, faces potential prosecution as an adult.  That the differences in liability between the juvenile court system and the criminal court system require reference to other statutes, does not make the statute in question unconstitutionally vague.  Moreover, the standard

9.

set out by the United States Supreme Court refers to the understanding of " 'a person of ordinary intelligence' " (*United States v. Batchelder*, *supra*, 442 U.S. at p. 123), not the understanding of a 14-year-old, as posited by the District Attorney.

The District Attorney fares no better with respect to the arbitrary/discriminatory enforcement prong. We categorically reject the suggestion law enforcement officers may intentionally "not . . . solve crimes or not . . . catch fugitives" so as to increase a minor's liability. That a minor's punishment may, under certain circumstances, be based on when he or she is apprehended rather than the type of crime he or she committed, does not make the statute vague.

III

**Senate Bill No. 1391 applies retroactively.**

The District Attorney observes that the text of Senate Bill No. 1391 does not address retroactivity, and there is a presumption that laws apply prospectively only. He recognizes that in *Lara*, *supra*, 4 Cal.5th at page 308, the California Supreme Court held that because Proposition 57 ameliorated the possible punishment for a class of persons — juveniles — an inference of retroactivity applied. He argues, however, that in the case of Senate Bill No. 1391, the Legislature had the "clear option to explicitly state" the statute applies retroactively and failed to do so. Although the District Attorney does not expressly state the conclusion he would have us draw, it appears he is claiming Senate Bill No. 1391 should not apply retroactively to juveniles like I.R., whose alleged offenses were committed before the statute's effective date.

The District Attorney's position lacks merit. He provides no reason whatsoever for applying Senate Bill No. 1391 differently than *Lara* requires us to apply Proposition 57: retroactively "to all juveniles . . . whose judgment was not final at the time it was enacted." (*Lara*, *supra*, 4 Cal.5th at p. 304.) "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have

10.

enacted or amended a statute in light thereof. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 329.)

IV

**The murder case against I.R. cannot be transferred to criminal court based on the felony I.R. allegedly committed when he was age 17.**

The District Attorney contends that even if I.R. should not have been transferred to criminal court based on the homicide alone, he — and the murder charge — were properly transferred based on the separate felony assault he allegedly committed when he was 17 years old. Relying on section 707.01, subdivision (a)(3), which was not changed by Senate Bill No. 1391, the District Attorney reasons the assault case was properly transferred to criminal court[8]; murder is an offense listed in section 707, subdivision (b) and so is a proper subject for transfer; hence, the juvenile court has jurisdiction to transfer I.R. to adult court on all charges. We disagree.

Section 707.01, subdivision (a)(3) provides: "(a) If a minor is found an unfit subject to be dealt with under the juvenile court law pursuant to Section 707, then the following shall apply: [¶] . . . [¶] (3) All petitions pending against the minor shall be transferred to the court of criminal jurisdiction where one of the following applies: [¶] (A) Jeopardy has not attached and the minor was 16 years of age or older at the time he or she is alleged to have violated the criminal statute or ordinance. [¶] (B) Jeopardy has not attached and the minor is alleged to have violated a criminal statute for which he or she may be presumed or may be found to be not a fit and proper subject to be dealt with under the juvenile court law."

---

[8]    Because the assault case was transferred to criminal court post-Proposition 57, we assume the juvenile court applied the standards set out in section 707, as amended by the Act.

11.

Without explanation, the District Attorney asserts section 707, subdivision (b) conflicts with section 707.01, subdivision (a)(3) and then concludes that, because murder is a section 707, subdivision (b) offense, it "is a proper subject for transfer."

We recognize I.R. was 16 years of age or older at the time he allegedly committed felony assault, rendering transfer of that offense permissible pursuant to section 707, subdivision (a)(1), even after enactment of Senate Bill No. 1391. Additionally, murder is a transferrable offense. (§ 707, subd. (b)(1).) I.R. cannot, however, be transferred on the murder charge under either section 707.01 or section 707 because he was under 16 years of age at the time he allegedly committed it.

If a minor is found to be an unfit subject to be dealt with under juvenile court law pursuant to section 707, then we believe section 707.01, subdivision (a)(3)(A) requires transfer of all pending petitions where the minor was 16 or 17 years old at the time of the offense(s) alleged in those petitions. Had the Legislature intended transfer of pending petitions to occur whenever the minor was 16 years of age or older at the time of *any* alleged offense, presumably that body would have used the indefinite "a" with regard to "criminal statute."[9] Because the Legislature did not, I.R. does not meet the requirement of section 707.01, subdivision (a)(3)(A) with respect to the homicide and related charges and allegations. Post-Senate Bill No. 1391, subdivision (a)(3)(B) of section 707.01 does not apply to a minor under age 16 at the time of the offense, unless he or she was not apprehended prior to the end of juvenile court jurisdiction. (§ 707, subd. (a)(1) & (2).) I.R. does not meet this requirement. Moreover, as we have explained, I.R. is now

---

[9]    For example, in subdivision (a)(5) of section 707.01, the Legislature provided that if, after a finding of unfitness, the minor is convicted of the offenses that were the subject of the proceeding that resulted in the finding of unfitness, any new petition(s) alleging the violation of any law defining a crime need not be filed in juvenile court if the minor was 16 years of age or older at the time he or she allegedly violated "*a* criminal statute" or he or she allegedly violated "*a* criminal statute" for which he or she may be presumed or found to be unfit to be dealt with under the juvenile court law. (§ 707.01, subd. (a)(5)(A) & (B), italics added.)

12.

alleged, post-Senate Bill No. 1391, to have violated a criminal statute for which he may not be found to be unfit for juvenile court jurisdiction. Accordingly, section 707.01, subdivision (a)(3)(B) requires the petition arising out of the homicide to be disposed of in the juvenile court pursuant to the juvenile court law.

Even aside from the grammatical construction of section 707.01, subdivision (a)(3), prohibiting transfer of I.R.'s murder case comports with legislative intent. That intent, as clearly expressed by Senate Bill No. 1391, is to have 14- and 15-year-olds adjudicated — no matter the offense(s) alleged — in the juvenile court.

## **DISPOSITION**

The order to show cause previously issued is discharged, and the petition for writ of prohibition and/or mandate is denied. The stay issued by this court on March 4, 2019, shall remain in effect only until this opinion becomes final in all courts in this state or the California Supreme Court grants a hearing, whichever shall first occur; thereafter said order is vacated and said stay is dissolved.

_____
DETJEN, J.

I CONCUR:

_____
PEÑA, J.

13.

Poochigian, Acting P. J., dissenting.

One purpose of the Public Safety and Rehabilitation Act (Proposition 57) is to *require* that judges determine whether juveniles should be transferred to criminal court. In contrast, Senate Bill No. 1391 (2017–2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1) (Senate Bill 1391) effectively *prohibits* judges from determining whether certain juveniles should be transferred to criminal court. Whatever the wisdom of each enactment, it cannot be said that Senate Bill 1391 "further[s] the intent" (Prop. 57, § 5) of Proposition 57. As a result, Senate Bill 1391 is unconstitutional. (See Cal. Const., art II, § 10(c).) I respectfully dissent from the majority's contrary holding, which is largely based on this court's decision *People v. Superior Court* (*T.D.*) (F078697, Aug. 5, 2019) ___ Cal.App.5th ___ [2019 ___ Cal.App. LEXIS ___].

I.R. argues Senate Bill 1391 is consistent with the purposes of Proposition 57. The text of each enactment indicates otherwise.

*A.     Enumerated Purposes of Proposition 57*

In section 2, Proposition 57 provides:

"In enacting this act, it is the purpose and intent of the people of the State of California to:

"1.     Protect and enhance public safety.

"2.     Save money by reducing wasteful spending on prisons.

"3.     Prevent federal courts from indiscriminately releasing prisoners.

"4.     Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles.

"5.     Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."

The enumerated intent to "require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court," has two clear components. First, the phrasing "Require a judge … to decide whether juveniles should be tried in adult court" means

exactly what it says. The intent of Proposition 57 is to "require" a particular person (i.e., a judge) to make a particular decision (i.e., whether a juvenile should be tried as an adult). Second, the phrase, "not a prosecutor" embodies an intent to deny prosecutors the power to ultimately decide whether juveniles should be tried in adult court.

Senate Bill 1391 clearly conflicts this enumerated intent. Under Senate Bill 1391, neither a prosecutor *nor a judge*, may decide whether 14- and 15-year-old juveniles may be tried in adult court. Instead, the *Legislature* has made the decision for 14- and 15-year-old juveniles.[1] This is plainly in conflict with Proposition 57's stated purpose of *requiring* a judge to decide whether juveniles should be tried in adult court. (Prop. 57, § 2.)

Other courts of appeal have concluded otherwise by interpreting item 5 to evince *only* an intent to remove power from the prosecutor, while minimizing the intent to *require* the power be exercised by a judge. (See, e.g., *People v. Superior Court* (*K.L.*) (2019) 36 Cal.App.5th 529, 539 ["This language does not suggest a focus on retaining the ability to charge juveniles in adult court so much as removing the discretion of district attorneys to make that decision."]; see also *People v. Superior Court* (*T.D.*), *supra*, ___ Cal.App.5th at pp. ___-___ [2019 ___ Cal.App. LEXIS ___, *___-*___] (slip opn. at pp. 13-14).) Nothing in section 2 or the substantive provisions of Proposition 57 support such a reading.

Because the fifth enumerated intent of Proposition 57 is so clearly in conflict with Senate Bill 1391, we need not delve into the abstract, policy-laden questions of whether Senate Bill 1391 also conflicts with Proposition 57's other goals of enhancing public safety and saving money. (See Prop. 57, § 2.)

---

[1] Unless the juvenile was not apprehended prior to the end of juvenile court jurisdiction.

2

B.  *Reasonably Inferable Purposes of Proposition 57*

However, our analysis does not end with the general, express statements of intent in Proposition 57.  (See *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1256-1257.)  We must examine the enactment as a whole to derive its purposes.  (See *id.* at p. 1257.)

In that vein, I.R. argues the goal of Proposition 57 was to "enlarge the number of minors who could potentially remain in the juvenile justice system."  And, the argument goes, since Senate Bill 1391 further increases the number of juveniles who would remain in the juvenile justice system, it necessarily furthers the intent of Proposition 57.  However, this overly-simplistic approach ignores the fact that Proposition 57's purposes are multi-faceted.

Proposition 57 may have intended to reduce the number of youths to be prosecuted as adults … but only up to a point.  Proposition 57, like any enactment, was written to "go so far and no further."  (*Michigan v. Bay Mills Indian Cmty.* (2014) 572 U.S. 782, 794.)  "[S]tatutes have stopping points as well as general objectives, and how far to go in pursuit of those objectives is integral to the legislative choice.  [Citation.]"  (*NLRB v. HH3 Trucking, Inc.* (7th Cir. 2014) 755 F.3d 468, 471.)  "[L]imitations upon a law's scope are no less a part of its "purpose" than its substantive authorizations.  [Citation.]"  (*Rapanos v. United States* (2006) 547 U.S. 715, 752.)

Proposition 57 sought to find the balancing point of several disparate objectives, including enhancing public safety, saving money, and emphasizing rehabilitation.  The balance it struck is the result of *both* considerations of leniency and rehabilitation, *as well as* various considerations pushing in the other direction.  We cannot cherry-pick a single goal and conclude any enactment advancing that *singular* goal of leniency towards juveniles must also further the *multi-faceted* purposes of Proposition 57, regardless of how contrary that enactment may be to Proposition 57's other purposes.

3

Surely, one purpose of Proposition 57 is to emphasize rehabilitation for juveniles. (Prop. 57, § 2.) But another purpose is to require that judges determine whether juveniles – including 14 and 15 year olds – should be tried as adults. (*Ibid*.) We cannot elevate the former purpose above the latter, because there is "nothing in Proposition 57 to suggest voters intended the Act to extend as broadly as possible for one purpose but not for another." (*People v. Superior Court* (*T.D.*), *supra*, ___ Cal.App.5th at p. ___ [2019 ___ Cal.App. LEXIS ___, *___] (slip opn. at p. 11).)

In a related contention, some have observed that "the practice of allowing certain 14 and 15 year-olds to be prosecuted in criminal court is not an 'actual change[]' wrought by Proposition 57, but a continuation of a prior practice." (*People v. Superior Court* (*Alexander C.*) (2019) 34 Cal.App.5th 994, 1002; see also *People v. Superior Court* (*T.D.*), *supra*, ___ Cal.App.5th at p. ___ [2019 ___ Cal.App. LEXIS ___, *___] (slip opn. at p. 16).) But the question is not whether Proposition 57 was the first law to permit prosecution of 14 and 15 year olds as adults. Rather, the question is whether the continuation of that prior practice embodies an intent of Proposition 57. If so, then Senate Bill 1391's *dis*-continuation of that same practice cannot be said to further the intent of Proposition 57.

And there can be no doubt that Proposition 57 did intend to preserve the prior practice of permitting some 14 and 15 year olds to be tried as adults. Proposition 57 made *affirmative* statutory tweaks to ensure that, notwithstanding the closely related changes it made to juvenile law, 14 and 15 year olds could still be transferred to criminal court and prosecuted as adults. (Prop. 57, § 4.2 [altering statutory language to read "when he or she was 14 or 15 years of age" in subdivisions (a) and (b) of section 707].) Thus, Proposition 57 was not oblivious to its effect of preserving the prior practice, but rather went out of its way to ensure those juveniles could still be prosecuted as adults in some circumstances. Senate Bill 1391 is in direct conflict with that intent.

4

Because Senate Bill 1391 clearly does not "further" (Prop. § 57, § 2) the enumerated and inferable intents of Proposition 57, it is unconstitutional under article II, section 10(c) of the California Constitution.

I respectfully dissent.


_____
Poochigian, Acting P. J.

5