Filed 3/3/23  P. v. Marsh CA3
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C088553 |
| v. | (Super. Ct. No. CRF132418) |
| DANIEL WILLIAM MARSH, | ON TRANSFER |
| Defendant and Appellant. | |

When he was 15 years old, defendant Daniel William Marsh murdered two victims and mutilated the bodies.  (*People v. Marsh* (2018) 20 Cal.App.5th 694, 696-697 (*Marsh I*).)  Tried in adult criminal court, a jury convicted him on two counts of first degree special circumstance murder and the trial court sentenced him to 52 years to life in prison.

In defendant's first appeal, this court conditionally reversed the judgment and directed the juvenile court to conduct a transfer hearing to determine if defendant should be transferred to adult criminal court or retained in juvenile court pursuant to Proposition 57, the Public Safety and Rehabilitation Act of 2016, which had become effective while defendant's appeal was pending.  (*Marsh I, supra*, 20 Cal.App.5th 694.)  On remand, the juvenile court granted the People's motion to transfer defendant to adult criminal court

1

and the judgment was reinstated in October 2018 without any change, as required by this court's disposition in *Marsh I*.

After the judgment was reinstated, Senate Bill No. 1391 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1012, § 1 (Senate Bill 1391)) became effective on January 1, 2019. With exceptions not applicable here, it eliminated the authority of a prosecutor to seek transfer to adult criminal court of a minor who was 14 or 15 years old at the time of an offense. (Welf. & Inst. Code, § 707, subd. (a); Stats. 2018, ch. 1012, § 1.)

Defendant purported to appeal from the reinstated judgment, asserting that Senate Bill 1391 applied to him because his case was not yet final. This court dismissed the appeal, concluding defendant's judgment was final before Senate Bill 1391 went into effect. (*People v. Marsh* (Sept. 8, 2021, C088553) [nonpub. opn.] (*Marsh II*).)

The California Supreme Court subsequently granted review in *Marsh II* and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*). We vacated our decision.

In supplemental briefing after transfer, the parties disagree on whether the decision in *Padilla* controls here. *Padilla* involved a juvenile offender who was originally sentenced in criminal court before Proposition 57 was enacted, but whose judgment became nonfinal when his sentence was vacated on habeas corpus and the case was returned to the trial court for imposition of a new sentence. (*Padilla, supra*, 13 Cal.5th at p. 158.) The California Supreme Court held that under those circumstances, Proposition 57 applied on resentencing. (*Padilla,* at p. 158.)

Defendant argues *Padilla* is on point, but the People claim *Padilla* is distinguishable because here defendant's sentence was never vacated and the trial court never regained resentencing authority.

We conclude *Padilla* is inapposite. In *Padilla*, the defendant's sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment

2

was appropriate for him, and the defendant regained the right to appeal whatever new sentence was imposed, thereby rendering his judgment nonfinal. (*Padilla, supra*, 13 Cal.5th at pp. 161-162.) Here, however, the court in *Marsh I* only *conditionally* reversed the judgment, the trial court did not regain the jurisdiction or duty to resentence (because the juvenile court determined that transfer to adult court was appropriate), the trial court reinstated the judgment without change as this court's disposition in *Marsh I* required it to do under those circumstances, and defendant did not regain a right to appeal a new sentence.

Because defendant's judgment was final before Senate Bill 1391 went into effect, we will dismiss this appeal.

## BACKGROUND

In 2013, defendant was one month shy of his 16th birthday when he "stalked a Davis neighborhood at night and randomly selected the home of the two victims to satisfy a long-standing (and oft-expressed) desire to kill, after which he mutilated their bodies." (*Marsh I, supra*, 20 Cal.App.5th at pp. 696-697.)

An information filed directly in adult criminal court charged defendant with two counts of murder (Pen. Code, § 187, subd. (a))[1] and alleged various enhancements and special circumstances. (*Marsh I, supra*, 20 Cal.App.5th at p. 696.) A jury found defendant guilty of two counts of first degree murder committed while personally using a deadly weapon, and sustained three special circumstance allegations: that defendant committed multiple murder (§ 190.2, subd. (a)(3)), by means of torture (§ 190.2, subd. (a)(18)), while lying in wait (§ 190.2, subd. (a)(15)). The trial court sentenced defendant to 52 years to life in prison, consisting of 25 years to life for each murder plus an additional year for each weapon enhancement.

---

[1] Undesignated statutory references are to the Penal Code.

Defendant appealed his convictions and in 2018 this court rejected his argument regarding the applicable insanity standard but conditionally reversed and remanded the matter with directions to hold a transfer hearing in light of newly enacted Proposition 57. The new law eliminated a prosecutor's ability to file charges directly in adult court, instead requiring the prosecutor to commence an action in juvenile court and then seek to transfer the matter to adult criminal court if appropriate. (See *Marsh I, supra*, 20 Cal.App.5th 694; see also *People v. Superior Court (Alexander C.)* (2019) 34 Cal.App.5th 994, 997 (*Alexander C.*); *People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 303 (*Lara*) [Proposition 57 applies retroactively to cases not yet final on appeal]; Welf. & Inst. Code, § 707, subd. (a)(1).)[2] The California Supreme Court denied review (case No. S247864) and a remittitur issued on May 30, 2018.

The Yolo County District Attorney then filed a petition under Welfare and Institutions Code section 602 and a motion to transfer the case to adult criminal court. The juvenile court granted the transfer motion and the judgment was reinstated on October 24, 2018. Defendant filed a writ petition in this court (case No. C088306) challenging the juvenile court's orders denying his motion to continue the transfer hearing until after Senate Bill 1391 went into effect and transferring him to adult criminal court. This court summarily denied the writ petition. Senate Bill 1391 became effective on January 1, 2019. The California Supreme Court denied review on February 13, 2019.

When defendant purported to appeal from the reinstated judgment, this court dismissed the appeal, concluding defendant's judgment was final before Senate Bill 1391 went into effect. (*Marsh II, supra*, C088553.) The California Supreme Court granted review and transferred the matter back to us with directions to vacate our opinion and

---

[2] This court treated defendant's request for judicial notice of the appellate record in his first appeal, case No. C078999, as a request to incorporate the records of those proceedings, and granted the motion.

reconsider the cause in light of *Padilla, supra*, 13 Cal.5th 152. We vacated our decision and we have considered the supplemental briefing after transfer.

DISCUSSION

Defendant argues Senate Bill 1391 applies to him under *In re Estrada* (1965) 63 Cal.2d 740, 742-746 (*Estrada*) because his case is not yet final. We review this question of law de novo. (See *People v. Arroyo* (2016) 62 Cal.4th 589, 593.)[3]

A

The decision whether to try a minor in juvenile court or adult criminal court can have significant consequences. (*Lara, supra*, 4 Cal.5th at p. 306.) While persons convicted of serious crimes in adult court can be punished with long prison sentences, juveniles tried in juvenile court generally receive more lenient treatment, with shorter periods of confinement and a focus on rehabilitation. (*Id*. at pp. 303, 306; see *K.C. v. Superior Court* (2018) 24 Cal.App.5th 1001, 1011.)

Historically, only those minors at least 16 years of age at the time of the offense could be tried in adult criminal court, and then only after a judicial determination that the minor was unfit to be dealt with under juvenile court law. (*K.L., supra*, 36 Cal.App.5th at p. 536-537.) The minimum transfer age remained at 16 for over three decades, until 1994, when the Legislature lowered it to 14 for certain enumerated serious or violent felonies. (*B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, 750-751.) Under the 1994 legislation, a minor as young as 14 years of age could be prosecuted in adult criminal court after a judicial determination of unfitness for juvenile adjudication. (*K.L.,* at p. 537.)

---

[3] The Yolo County District Attorney filed an amicus brief agreeing with the People but also urging us to conclude that Senate Bill 1391 is unconstitutional because it does not further the intent and purpose of Proposition 57. Such a constitutional challenge was recently rejected by the California Supreme Court in *O.G. v. Superior Court* (2021) 11 Cal.5th 82, 87.

In 2000, California voters passed Proposition 21, the Gang Violence and Juvenile Crime Prevention Act, which broadened the circumstances in which minors 14 years of age and older could be prosecuted in adult criminal court. (*K.L., supra*, 36 Cal.App.5th at p. 537; *B.M. v. Superior Court, supra*, 40 Cal.App.5th at p. 751.) Proposition 21 permitted, and in some cases required, prosecutors to charge minors aged 14 or 15 directly in adult criminal court without a judicial determination of unfitness. (*Alexander C., supra*, 34 Cal.App.5th at p. 997; see *Lara, supra*, 4 Cal.5th at p. 305.)

In 2016, voters eliminated some of the changes made by Proposition 21 through the enactment of Proposition 57. (*Alexander C., supra*, 34 Cal.App.5th at p. 997.) With respect to juveniles, Proposition 57 " 'largely returned California to the historical rule' " by eliminating prosecutors' ability to file charges against juveniles directly in criminal court and limiting the circumstances under which a minor could be transferred to criminal court by a judge. (*Id*. at p. 998.) Minors aged 14 or 15 could still be tried in criminal court for specified serious or violent offenses, but only after a juvenile court judge conducted a transfer hearing and decided the minor was unfit for juvenile court. (*Lara, supra*, 4 Cal.5th at pp. 305, 308.)

Proposition 57 permits amendments without voter approval so long as the changes are consistent with, and further, the intent of the act. (*K.L., supra*, 36 Cal.App.5th at p. 535.) In 2018, the Legislature enacted Senate Bill 1391 (Stats. 2018, ch. 1012, § 1), which amended Proposition 57 by eliminating the authority of prosecutors to seek transfer to criminal court of a minor who was 14 or 15 years old at the time of the offense, "save for a narrow exception if the minor is 'not apprehended prior to the end of juvenile court jurisdiction.' (Welf. & Inst. Code, § 707, subd. (a)(2).)" (*Alexander C., supra*, 34 Cal.App.5th at p. 998.)

B

We agree with the parties that Senate Bill 1391 applies retroactively to nonfinal judgments under *Estrada*. (*People v. Superior Court (I.R.)* (2019) 38 Cal.App.5th 383,

6

386; *C.S. v. Superior Court* (2018) 29 Cal.App.5th 1009, 1038; see *Lara, supra*, 4 Cal.5th at pp. 303-304.) The question is whether defendant's judgment was final prior to the effective date of Senate Bill 1391. We consider *Padilla* in addressing this issue.

Defendant originally argued that because his appeal was still pending, his case was not yet final. At the very least, he argued the judgment was not final until February 13, 2019, when the Supreme Court denied review of his writ challenging the transfer order after remand. Under either scenario, he claimed Senate Bill 1391 requires reversal of the criminal judgment and remand to the juvenile court for disposition. Defendant has now reasserted certain arguments in his supplemental briefing. In addition, he references *Padilla* and argues it does not matter whether the vehicle for suspension of judgment is vacatur, conditional vacatur, reversal, or conditional reversal, suggesting this court's conditional reversal in *Marsh I* was effectively the same, for purposes of *Estrada* retroactivity, as the vacated judgment in *Padilla*.

The People disagree. They argue defendant's judgment became final 90 days after the Supreme Court denied review in *Marsh I;* the conditional reversal was not the same as the order involved in *Padilla* in which the judgment was vacated and the matter was remanded for resentencing; the *Marsh I* disposition defined the entirety of the trial court's jurisdiction to act on remand and was, in effect, a conditional affirmance if the juvenile court found transfer to adult court appropriate; once the juvenile court found transfer appropriate, the trial court only had authority to reinstate the judgment without change; and because the reinstated judgment had already been conditionally affirmed by this court, there was no new judgment from which to appeal. According to the People, *Padilla* is distinguishable.

The defendant in *Padilla* was 16 years old when he murdered his mother and conspired to kill his stepfather. (*Padilla, supra*, 13 Cal.5th at p. 159.) He was tried as an adult and sentenced to life without the possibility of parole (LWOP). (*Ibid.*) His sentence was subsequently vacated twice based on intervening United States Supreme

7

Court precedent regarding juvenile LWOP sentences. (*Ibid.*) About two weeks after his sentence was vacated for the second time, the California electorate approved Proposition 57, which "amended the law governing the punishment of juvenile offenses in adult criminal court by requiring hearings to determine whether the offenses should instead be heard in juvenile court." (*Id.* at p. 158.) *Estrada*'s inference of retroactivity applies to the proposition's juvenile provisions. (*Padilla,* at p. 158.)

In *Padilla* the California Supreme Court considered whether Proposition 57 applied retroactively to defendant on resentencing after his original sentence -- which had become final -- was vacated in a habeas proceeding. (*Padilla, supra*, 13 Cal.5th at pp. 158, 163.) The Supreme Court held that Proposition 57 applied (*id.* at p. 158), reasoning: "When Padilla's sentence was vacated, the trial court regained the jurisdiction and duty to consider what punishment was appropriate for him, and Padilla regained the right to appeal whatever new sentence was imposed." (*Id.* at pp. 161-162.) The judgment in his case "thus became nonfinal," and there was "no 'constitutional obstacle' to applying the *Estrada* presumption to his case. [Citation.]" (*Padilla,* at p. 162.)

The procedural posture in the instant case is different from *Padilla*. In *Marsh I*, this court issued the following disposition: "The judgment of the criminal court is conditionally reversed and the matter remanded to the juvenile court with directions to hold a juvenile transfer hearing to determine defendant's suitability for treatment in juvenile or criminal court within 90 days of the issuance of our remittitur. If the juvenile court determines that defendant is the proper subject of criminal proceedings, it shall reinstate the criminal judgment. If the juvenile court finds that it would not have transferred defendant to a court of criminal jurisdiction, then it shall deem defendant's convictions to be juvenile adjudications and conduct a dispositional hearing within its usual time frame." This court's conditional reversal in *Marsh I* and remand for a transfer hearing did not disturb defendant's murder convictions or vacate his sentence. (*Andrew M. v. Superior Court* (2020) 43 Cal.App.5th 1116, 1126.) The trial court did not regain

8

the jurisdiction or duty to resentence, because the juvenile court determined on remand that transfer to adult court was appropriate. The judgment was reinstated without change as required by this court's disposition in *Marsh I*, and defendant did not regain a right to appeal a new sentence. Defendant was returned to the custody of the Department of Corrections and Rehabilitation to serve the remainder of his originally imposed sentence.

"[T]he terms of the remittitur define the trial court's jurisdiction to act. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled." ' " (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5.) Here, the legal effect of the disposition, as defendant concedes, was a conditional affirmance of the judgment should the juvenile court find transfer appropriate. After holding the transfer hearing, the juvenile court found that transferring defendant to adult criminal court was proper, and, as directed by our disposition, the judgment was reinstated. (§ 1265, subd. (a) ["After the certificate of the judgment has been remitted to the court below, . . . all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted"]; *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366 [upon issuance of remittitur, "the trial court is revested with jurisdiction of the case, but only to carry out the judgment as ordered by the appellate court," italics omitted].)

At the time the juvenile court granted the transfer order,[4] the order was only reviewable by a petition for extraordinary writ. (Cal. Rules of Court., rule 5.770(g).)[5] Defendant filed a writ petition challenging the juvenile court's transfer order, this court

---

[4] Effective January 1, 2022, a change in the law (Stats. 2021, ch. 195, § 1) authorizes an appeal of an order granting transfer from juvenile to criminal court. Defendant concedes the new law is not applicable here.

[5] Undesignated rules references are to the California Rules of Court.

9

summarily denied the petition, and the California Supreme Court denied review. Defendant's challenge to the transfer order is not before this court on direct appeal.

Defendant cited *People v. Wycoff* (2008) 164 Cal.App.4th 410, but that case is inapposite. The court in *Wycoff* held that when a matter is remanded for the trial court to conduct a proper *Pitchess* hearing, the defendant may appeal from the reinstated judgment for the limited purpose of challenging the *Pitchess* findings, although the defendant cannot relitigate issues that were or could have been decided in the first appeal. (*Id.* at p. 415.) Unlike the *Pitchess* context in *Wycoff*, here defendant could not challenge the transfer order by direct appeal. (Rule 5.770(g).)

It is true that when the California Supreme Court denied review of this court's summary denial of the writ petition on February 13, 2019, it indicated the denial was without prejudice to any relief under Senate Bill 1391 to which defendant *might be* entitled on direct appeal after Senate Bill 1391's effective date. (See *D.M. v. Superior Court* (2019) Cal. LEXIS 1031, S253054.) But we have concluded defendant is not entitled to such relief on direct appeal due to the finality of his judgment which, as we have explained, is procedurally separate and apart from the denial of writ relief.

Defendant's continued reliance on *People v. McKenzie* (2020) 9 Cal.5th 40 is also misplaced. In that case the trial court suspended imposition of sentence and placed the defendant on probation, and the defendant did not appeal from the order granting probation. Nevertheless, the California Supreme Court held that the defendant could seek the benefit of ameliorative statutory amendments during a later appeal from a judgment revoking probation and imposing sentence. (*Id.* at p. 43.) The Court held that in such a context defendant could seek the benefit of the change in the law that took effect while his appeal was pending. But the procedural circumstances of *McKenzie* were different than those here, and cases are not authority for propositions not considered. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1134.)

10

*People v. Esquivel* (2021) 11 Cal.5th 671, cited by defendant, is also distinguishable. In that case the trial court imposed sentence but suspended its execution and placed the defendant on probation. (*Id.* at p. 673.) The California Supreme Court held that "a case in which a defendant is placed on probation with execution of an imposed state prison sentence suspended is not yet final for [*Estrada*] purpose[s] if the defendant may still timely obtain direct review of an order revoking probation and causing the state prison sentence to take effect." (*Ibid*.) The court reasoned that the defendant's case "was not final, for purposes of the *Estrada* presumption, because the 'criminal prosecution or proceeding' brought against him was not complete when the ameliorative legislation at issue took effect." (*Id.* at p. 678.) The court emphasized that the defendant in *Esquivel* "had not exhausted direct review of the order causing his carceral punishment to take effect. The time for him to seek that review had not expired." (*Ibid.*)

Unlike the circumstances in *Esquivel*, here the execution of defendant's sentence was never stayed, he was never placed on probation, and he *did* exhaust review of the reinstated judgment. Defendant never filed a petition for writ of certiorari after the California Supreme Court denied review.[6]

There is no indication the Legislature intended Senate Bill 1391 to apply to a final judgment. "While we recognize that the Legislature may expressly avail defendants whose judgments are final of the benefits of newly enacted laws" (*People v. Chamizo* (2019) 32 Cal.App.5th 696, 700-701 [finding Senate Bill No. 180 did not apply

---

[6] Defendant argues he may still seek review in the United States Supreme Court because he raised a federal issue in *Marsh I*. But it appears the time to file a petition for certiorari has passed. (See U.S. Supreme Ct. Rules, rule 13.1 ["A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review"].)

retroactively to final judgments]), defendant points to nothing indicating that the Legislature intended such a result. (Compare Proposition 36 & Proposition 47; *People v. Rascon* (2017) 10 Cal.App.5th 388, 394-395 [Proposition 64 provides mechanism for resentencing or dismissing all judgments, including those that are final].)

Because the trial court's reinstatement of the final judgment did not affect defendant's substantial rights and is not appealable, the appeal must be dismissed. (§ 1237; *People v. Fuimaono* (2019) 32 Cal.App.5th 132, 135 [appeal from nonappealable postjudgment order must be dismissed; trial court lacked jurisdiction to grant defendant's sentencing request where conviction was final, and denial of motion could not have affected defendant's substantial rights and was therefore not appealable]; *People v. Chlad* (1992) 6 Cal.App.4th 1719, 1726 [dismissing appeal after ruling the trial court lacked jurisdiction to modify the restitution fines].)

DISPOSITION

The appeal is dismissed.


_____/S/_____

MAURO, Acting P. J.

We concur:


_____/S/_____

DUARTE, J.


_____/S/_____

RENNER, J.

12