# IN THE SUPREME COURT OF CALIFORNIA

O.G., a Minor, etc.,
Petitioner,

v.

THE SUPERIOR COURT OF VENTURA COUNTY,
Respondent;
THE PEOPLE,
Real Party in Interest.

S259011

Second Appellate District, Division Six
B295555

Ventura County Superior Court
2018017144

February 25, 2021

Justice Groban authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Corrigan, Liu, Cuéllar, Kruger and Kline* concurred.

---

\* Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

O.G. v. SUPERIOR COURT

S259011


Opinion of the Court by Groban, J.


Proposition 57, passed in the November 2016 general election (Proposition 57), requires prosecutors to commence all cases involving a minor in juvenile court. "Proposition 57 is an 'ameliorative change[] to the criminal law' " that "the legislative body intended 'to extend as broadly as possible.' " (*People v. Superior Court (Lara)* (2018) 4 Cal. 5th 299, 309 (*Lara*).) Proposition 57 expressly allowed for amendments that "are consistent with and further the intent of this act . . . ." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 5, p. 145 (2016 Voter Guide).) As originally enacted, Proposition 57 allowed prosecutors to move to transfer some minors as young as 14 from juvenile court to adult criminal court. Senate Bill No. 1391 (2017–2018 Reg. Sess.) (Senate Bill 1391), enacted in 2018, amended Proposition 57 to prohibit minors under the age of 16 from being transferred to adult criminal court. (See Welf. & Inst. Code, § 707, subd. (a)(1)–(2), as amended by Stats. 2018, ch. 1012, § 1.)

In this case, the Court of Appeal held that Senate Bill 1391 is inconsistent with Proposition 57 and thus invalid (*O.G. v. Superior Court* (2019) 40 Cal.App.5th 626, 629), a holding at odds with every other Court of Appeal opinion to have addressed the issue. We agree with the majority view that Senate Bill 1391 was a permissible amendment to Proposition 57 and we reverse the judgment in this case. Because Proposition 57 expressly permits legislative amendments, we must presume the

Legislature acted within its authority and uphold Senate Bill 1391 "if, by any reasonable construction, it can be said that the statute" is consistent with and furthers the intent of Proposition 57. (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1256 (*Amwest*).) While barring the transfer of 14 and 15 year olds to adult court is a change from Proposition 57's statutory provisions, that change is what makes Senate Bill 1391 an amendment to Proposition 57. The amendment is fully consistent with and furthers Proposition 57's fundamental purposes of promoting rehabilitation of youthful offenders and reducing the prison population. We therefore uphold Senate Bill 1391 as a permissible amendment to Proposition 57.

## I. BACKGROUND

" 'Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law.' " (*Lara*, *supra*, 4 Cal. 5th at p. 305.) In 1961, the Legislature set 16 years old as the minimum age that a minor could be transferred to criminal court. (See Welf. & Inst. Code, former §§ 510, 603, 707, as amended by Stats. 1961, ch. 1616, pp. 3462, 3472, 3485.) The age limit preventing prosecution of those younger than 16 in criminal court remained in place for close to 34 years.

In 1995, California began to move away from the historical rule when the Legislature permitted some 14 and 15 year olds to be transferred to criminal court. (See, e.g., Welf. & Inst. Code, § 707, former subds. (d), (e), as amended by Stats. 1994, ch. 453, § 9.5.) This trend continued over the next five years and culminated with Proposition 21 in 2000. For specified murders and sex crimes, Proposition 21 required prosecutors to charge

minors 14 years old or older directly in criminal court. (Welf. & Inst. Code, § 602, former subd. (b), repealed by Prop. 57, § 4.1.) For other specified serious offenses, Proposition 21 provided prosecutors with discretion to charge minors 14 or older directly in criminal court instead of juvenile court. (Welf. & Inst. Code, § 707, former subd. (d), repealed by Prop. 57, § 4.2.)

In the years after the passage of Proposition 21, there was "a sea change in penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders, as reflected in several judicial opinions." (*People v. Vela* (2018) 21 Cal.App.5th 1099, 1106.) These changes were based upon developments in scientific research on adolescent brain development confirming that children are different from adults in ways that are critical to identifying age-appropriate sentences. (See, e.g., *Roper v. Simmons* (2005) 543 U.S. 551, 569–571; *Graham v. Florida* (2010) 560 U.S. 48, 68–75 (*Graham*); *Miller v. Alabama* (2012) 567 U.S. 460, 469–470; *People v. Gutierrez* (2014) 58 Cal.4th 1353, 1375–1376; *People v. Caballero* (2012) 55 Cal.4th 262, 267.) In the same period, the California Legislature enacted numerous reforms reflecting a rethinking of punishment for minors. (See, e.g., Stats. 2012, ch. 828, § 1; Stats. 2013, ch. 312, § 4; Stats. 2015, ch. 471, § 1; Stats. 2015, ch. 234, § 1.)

Consistent with these changes, in November 2016, the public implemented a series of criminal justice reforms through the passage of Proposition 57. For juvenile defendants, Proposition 57 "largely returned California to the historical rule." (*Lara, supra,* 4 Cal. 5th at p. 305.) " 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer

hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' " (*Ibid.*) For minors 16 or older, prosecutors can seek transfer to criminal court for any felony offense. (Welf. & Inst. Code, § 707, subd. (a)(1).) For 14 and 15 year olds, prosecutors could seek transfer to criminal court only for specified serious or violent offenses. (*Id.*, § 707, former subd. (a)(1), as amended by Prop. 57, § 4.2.) "All remnants of Proposition 21 were deleted by passage of Proposition 57." (*People v. Superior Court (K.L.)* (2019) 36 Cal.App.5th 529, 534, fn. 3 (*K.L.*).)

Senate Bill 1391 (Stats. 2018, ch. 1012, § 1) continued California's return to the historical rule. Effective January 1, 2019, Senate Bill 1391 amended Proposition 57 by eliminating the transfer of juveniles accused of committing crimes when they are 14 or 15 years old, unless they are first apprehended after the end of juvenile court jurisdiction. (See Welf. & Inst. Code, § 707, subd. (a)(1)–(2), as amended by Stats. 2018, ch. 1012, § 1.) In this way, Senate Bill 1391 marked a return to the rule in place beginning in 1961 and for close to 34 years thereafter — 16 again became the minimum age for transferring a minor to criminal court. (See Welf. & Inst. Code, former §§ 510, 603, 707, as amended by Stats. 1961, ch. 1616, pp. 3462, 3472, 3485.)

Two days after the passage of Senate Bill 1391, the Ventura County District Attorney's Office (the District Attorney's Office) filed a petition in juvenile court alleging that when minor O.G. was 15 years old, he committed two counts of murder (Pen. Code, § 187, subd. (a)) and one count of second degree robbery (*id.*, § 211), with gang (*id.*, § 186.22, subd. (b)(1)) and firearm (*id.*, § 12022.53, subds. (b), (d), & (e)(1))

enhancements. The District Attorney's Office contemporaneously filed a motion to transfer O.G. to criminal court. The District Attorney's Office argued that Senate Bill 1391 is an unconstitutional amendment to Proposition 57 and the juvenile court therefore retained its authority to conduct a hearing to determine O.G.'s suitability for transfer to criminal court.

The juvenile court found that Senate Bill 1391 is unconstitutional because it prohibits what Proposition 57 "expressly permit[s]: adult court handling of 14 and 15 year old minors accused of murder." O.G. filed a petition for writ of mandate challenging the juvenile court's ruling. The Court of Appeal denied writ relief and held that Senate Bill 1391 is unconstitutional because the language of Proposition 57 permits adult prosecution for 14 and 15 year olds, but Senate Bill 1391 precludes such prosecution. (*O.G. v. Superior Court*, *supra*, 40 Cal.App.5th 626, 628–629.) The Court of Appeal disagreed with what was at the time five and is now seven other Court of Appeal panels to have addressed the issue. (See *People v. Superior Court* (*Alexander C.*) (2019) 34 Cal.App.5th 994 (*Alexander C.*); *K.L.*, *supra*, 36 Cal.App.5th at p. 529; *People v. Superior Court* (*T.D.*) (2019) 38 Cal.App.5th 360, review granted Nov. 26, 2019, S257980 (*T.D.*); *People v. Superior Court* (*I.R.*) (2019) 38 Cal.App.5th 383, review granted Nov. 26, 2019, S257773; *People v. Superior Court* (*S.L.*) (2019) 40 Cal.App.5th 114, review granted Nov. 26, 2019, S258432; *B.M. v. Superior Court* (2019) 40 Cal.App.5th 742, review granted Jan. 2, 2020, S259030 (*B.M.*); *Narith S. v. Superior Court* (2019) 42 Cal.App.5th 1131, review granted Feb. 19, 2020, S260090.) We granted review.

## II. DISCUSSION

The parties disagree over whether Senate Bill 1391 is a constitutional amendment to Proposition 57. The District Attorney's Office, which is the real party in interest, argues that Senate Bill 1391 is an invalid amendment. O.G.'s position, with which the Attorney General agrees, is that Senate Bill 1391 is a valid amendment. We agree with O.G. and the Attorney General.

### A. Legal Standard

"The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c).) In this case, in an uncodified amendment clause, Proposition 57 provides that its provisions concerning the treatment of juveniles "may be amended so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor." (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145.) The parties agree that Senate Bill 1391 amended Proposition 57 by, in almost all circumstances, eliminating a juvenile court's power to transfer cases to criminal court for more serious crimes committed by 14 and 15 year olds. (See Welf. & Inst. Code, § 707, subd. (a)(1)–(2), as amended by Stats. 2018, ch. 1012, § 1.) The question in this case is whether the amendments in Senate Bill 1391 are "consistent with and further the intent" of Proposition 57. (2016 Voter Guide, *supra*, § 5, at p. 145.)

In making this determination, we "apply the general rule that 'a strong presumption of constitutionality supports the Legislature's acts.' " (*Amwest*, *supra*, 11 Cal.4th at p. 1253.) However, an initiative "must be given the effect the voters intended it to have." (*Id*. at pp. 1255–1256.) "[S]tarting with the presumption that the Legislature acted within its authority, we shall uphold the validity of [a legislative amendment] if, by any reasonable construction [of the initiative], it can be said that the statute" complies with the initiative's conditions for enacting legislative amendments. (*Id*. at p. 1256.) Often, as is the case here and in *Amwest*, the initiative's conditions for making amendments involve the requirement that any amendment "furthers the purposes of [the] Proposition . . . ." or words of similar effect. (*Ibid*.; see *id*. at p. 1251.) In discerning the purposes of a proposition, "we are guided by, but are not limited to, the general statement of purpose found in the initiative." (*Id*. at p. 1257.) " '[E]vidence of its purpose may be drawn from many sources, including the historical context of the amendment, and the ballot arguments favoring the measure.' " (*Id*. at p. 1256.) " '[L]egislative findings, while not binding on the courts, are given great weight and will be upheld unless they are found to be unreasonable and arbitrary.' " (*Id*. at p. 1252.) " ' "[W]here limitations upon [legislative power] are imposed they are to be strictly construed, and are not to be given effect as against the general power of the legislature, unless such limitations clearly inhibit the act in question." ' " (*Id*. at p. 1255, quoting *Martin v. Riley* (1942) 20 Cal.2d 28, 40.)

Guided by, but not limited to, the initiative's statement of purpose, we therefore are bound to afford a highly deferential standard: We must presume the Legislature acted within its authority if by "any reasonable construction" (*Amwest*, *supra*, 11

Cal.4th at p. 1256) of Proposition 57, Senate Bill 1391's amendments are "consistent with and further the intent" of the proposition. (Prop. 57, § 5.) This means that we must uphold the constitutionality of Senate Bill 1391 even if the District Attorney's Office is able to proffer other, plausible interpretations of the purpose and intent of Proposition 57. As long as there is "any reasonable construction" of Proposition 57 such that Senate Bill 1391's amendments are "consistent with and further the intent" of Proposition 57, we must uphold Senate Bill 1391. In this case, Senate Bill 1391 is fully consistent with and furthers Proposition 57's purposes.

## B. Express Purpose and Intent of Proposition 57

Proposition 57's statement of "Purpose and Intent" provides that: "[i]n enacting this act, it is the purpose and intent of the people of the State of California to: [¶] 1. Protect and enhance public safety. [¶] 2. Save money by reducing wasteful spending on prisons. [¶] 3. Prevent federal courts from indiscriminately releasing prisoners. [¶] 4. Stop the revolving door of crime by emphasizing rehabilitation, especially for juveniles. [¶] 5. Require a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) The proposition further provides that "[t]his act shall be broadly construed to accomplish its purposes" (*id.*, § 5, p. 145) and that "[t]his act shall be liberally construed to effectuate its purposes" (*id.*, § 9, p. 146). We examine each of these enumerated purposes in turn.

First, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the proposition's public safety purpose. (See 2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) Adjudicating juveniles in

juvenile court where the focus is on rehabilitation, rather than in criminal court, may reasonably be considered as furthering public safety by discouraging recidivism. The voters who enacted Proposition 57 considered that "evidence shows that minors who remain under juvenile court supervision are less likely to commit new crimes." (2016 Voter Guide, *supra*, argument in favor of Prop. 57, p. 58.) In passing Senate Bill 1391, the Legislature also considered that "[e]xtensive research has established that youth tried as adults are more likely to commit new crimes in the future than their peers treated in the juvenile system . . . ." (Sen. Com. on Public Safety, Analysis of Sen. Bill 1391 (2017–2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 4 (hereafter Senate Committee Analysis).) The Assembly Committee on Public Safety reiterated that "[y]outh who commit crimes fare much better in the juvenile system than in the adult system because they benefit from the rehabilitative services, and are also less likely to commit crimes in the future than youth in the adult system." (Assem. Com. on Public Safety, Analysis. of Sen. Bill 1391 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 4 (hereafter Assembly Committee Analysis).) The practice of trying 14 and 15 year olds as adults "was started in the 90's, a time in California history where the state was getting 'tough on crime,' but not smart on crime. Back then, society believed that young people were fully developed at around age 14. Now, research has debunked that myth and cognitive science has proven that children and youth who commit crimes are very capable of change." (*Id*. at p. 3.) Furthermore, as "stated by the Supreme Court, 'it does not follow that courts taking a case-by-case proportionality approach could with sufficient accuracy distinguish the few incorrigible juvenile offenders from the many that have the

capacity for change.' " (*Id.* at p. 5, quoting *Graham*, *supra*, 560 U.S. at p. 77.) The Senate Committee on Public Safety noted that "[m]ost youth will eventually be released from prison and in the interest of protecting public safety, we need to ensure they get the treatment and tools they need to succeed when they return to society." (Sen. Com. Analysis, *supra*, p. 4.)

The District Attorney's Office argues that Senate Bill 1391 does not protect public safety because Proposition 57 adopted a flexible approach that permits 14 and 15 year olds to be tried as adults when public safety warrants, but Senate Bill 1391 ordinarily requires juvenile treatment for 14 and 15 year olds even if they have committed very serious crimes and pose a danger. The District Attorney's Office argues that it believes that Proposition 57's "evidence-based approach" is more protective of public safety than Senate Bill 1391's approach that places even greater emphasis on rehabilitation. But that is not how our deferential standard works. (*Amwest*, *supra*, 11 Cal.4th at p. 1256.) Both Proposition 57 and Senate Bill 1391 sought to protect public safety by reducing juvenile recidivism and therefore, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the proposition's public safety purpose. As the Court of Appeal explained in *B.M.*, "Senate Bill 1391 can easily be construed to promote public safety and reduce crime, since it increases the number of youth offenders who will remain in the juvenile justice system and avoid prison where the chance of recidivism is higher." (*B.M.*, *supra*, 40 Cal.App.5th at p. 756.)

It is also worth emphasizing that Senate Bill 1391 focused only on 14 and 15 year olds, leaving Proposition 57's procedures for handling 16 and 17 year olds completely intact. Nothing in Proposition 57 appears to forbid the Legislature from making a

judgment that public safety can be better protected by keeping the subset of particularly young, 14- and 15-year-old offenders in the juvenile system where they are more likely to receive appropriate education and emotional and psychological treatment, and less likely to reoffend after their release.

The District Attorney's Office cites cases where 14 and 15 year olds committed particularly serious crimes and argues these individuals pose such a danger to the public that releasing them at age 25 under the juvenile system would not protect the public. Again, the fact the District Attorney's Office does not agree with Senate Bill 1391's approach to public safety does not mean that there is no reasonable interpretation that, like Proposition 57, Senate Bill 1391 is consistent with and furthers protecting public safety. Moreover, in the case of the particularly heinous crimes cited by the District Attorney's Office, other avenues are available to retaining jurisdiction over juvenile offenders that pose a danger to the public. In signing the law the Governor "considered the fact that young people adjudicated in juvenile court can be held beyond their original sentence" under Welfare and Institutions Code section 1800. (Governor's message to Sen. on Senate Bill 1391 (Sept. 30, 2018) Sen. J. (2017–2018 Reg. Sess.) p. 6230.) That section permits the prosecutor to petition for an extension of juvenile court jurisdiction, even past the age of 25, if discharging a juvenile offender "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior . . . ." (Welf. & Inst. Code, § 1800, subd. (a).)

Second, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the

proposition's aim to save "money by reducing wasteful spending on prisons." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) Senate Bill 1391 sought to save money by ensuring that, under the bill, fewer minors will be transferred to adult criminal court where they could be incarcerated for a longer period in adult prison and be more likely to recidivate. (See Sen. Rules Com., Unfinished Business Analysis of Senate Bill 1391 (2017–2018 Reg. Sess.) as amended Aug. 20, 2018, p. 6 ["Potential long-term savings of an unknown amount by preventing youths from receiving extremely long sentences if adjudicated as an adult. [¶] 3) Potential savings of an unknown amount to the extent that keeping youth in juvenile court and facilities designed to rehabilitate juveniles reduces recidivism"].) Proposition 57 ballot materials expressed the same goal, informing voters that trying fewer minors as adults "would reduce state prison and parole costs as those youths would no longer spend any time in prison or be supervised by state parole agents following their release." (2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 57.) The District Attorney's Office does not dispute that Senate Bill 1391 is consistent with and furthers this cost-saving purpose.

Third, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the goal of preventing "federal courts from indiscriminately releasing prisoners." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) Proposition 57's ballot materials explained that "[o]vercrowded and unconstitutional conditions led the U.S. Supreme Court to order the state to reduce its prison population. Now, without a common sense, long-term solution, we will continue to waste billions and risk a court-ordered release of dangerous prisoners. This is an unacceptable outcome that puts

Californians in danger — and this is why we need Prop. 57."
(2016 Voter Guide, *supra*, argument in favor of Prop. 57, p. 58.)
The federal court order required California to "reduce the prison
population to 137.5% of the adult institutions' total design
capacity." (*Coleman v. Schwarzenegger* (E.D.Cal. 2009) 922
F.Supp.2d 882, 962; see also *Brown v. Plata* (2011) 563 U.S. 493,
501–503.) The federal court later refused to vacate its order
because, inter alia, the state failed to produce a " 'durable
remedy' " to the problem of prison overcrowding. (*Coleman v.
Brown* (E.D.Cal.2013) 922 F.Supp.2d 1004, 1043 (*Coleman II*).)
The federal court warned that the state had "thus far engaged
in openly contumacious conduct by repeatedly ignoring both this
Court's Order and at least three explicit admonitions to take all
steps necessary to comply with that Order." (*Id*. at p. 1049.) The
federal court further advised "Governor Brown has a duty to
exercise in good faith his full authority, including seeking any
changes to or waivers of state law that may be necessary to
ensure compliance with the Supreme Court's judgment." (*Id*. at
p. 1054.) Proposition 57 therefore facilitated California's
compliance with this federal court order by ensuring that fewer
juveniles would be incarcerated in state prison. These changes
to juvenile transfer proceedings were part of the proposition's
broader strategy to reduce the prison population. In addition to
these changes, Proposition 57 also enabled inmates to be
released earlier on parole by: (a) making any person convicted
of a nonviolent felony offense eligible for parole consideration
after completing the full term for his or her primary offense and
(b) giving the Department of Corrections and Rehabilitation
authority to award credits to inmates for good behavior. (2016
Voter Guide, *supra*, text of Prop. 57, §§ 3–4, p. 141.) Each of
these changes provided a " 'durable remedy' " that would

decrease the prison population (*Coleman II*, at p. 1043) and thereby diminish the likelihood that federal courts would "indiscriminately release[e] prisoners" (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141). Senate Bill 1391 similarly mitigates against federal courts "indiscriminately releasing prisoners" in order to reduce prison population because the bill ensures that now and in the future fewer minors are ultimately sent to adult prison. The District Attorney's Office does not dispute that Senate Bill 1391 is consistent with and furthers this purpose.

Fourth, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the purpose of stopping "the revolving door of crime by emphasizing rehabilitation, especially for juveniles." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) The District Attorney's Office argues that Senate Bill 1391 is inconsistent with this purpose because Proposition 57 already stopped "the revolving door" by implementing "a more balanced approach, which specifically includes the transfer of certain 14-or 15-year-olds to adult court." However, by its terms, Proposition 57 sought to broadly emphasize rehabilitation for all juveniles, including 14 and 15 year olds. In approving Proposition 57, voters considered "[e]vidence show[ing] that the more inmates are rehabilitated, the less likely they are to re-offend. Further evidence shows that minors who remain under juvenile court supervision are less likely to commit new crimes." (2016 Voter Guide, *supra*, argument in favor of Prop. 57, p. 58.) Proposition 57 "focuses our system on evidence-based rehabilitation for juveniles and adults because it is better for public safety than our current system." (*Ibid.*) Similarly, in enacting Senate Bill 1391, the Legislature considered that "[t]he juvenile system is very

14

different from the adult system. The juvenile system provides age-appropriate treatment, services, counseling, and education, and a youth's participation in these programs is mandatory. The adult system has no age-appropriate services, participation in rehabilitation programs is voluntary, and in many prisons, programs are oversubscribed with long waiting lists." (Sen. Com. Analysis, *supra*, at p. 4.) "When youth are given age-appropriate services and education that are available in the juvenile justice system, they are less likely to recidivate." (Assem. Com. Analysis, *supra*, at p. 4.) "Keeping 14 and 15 year olds in the juvenile justice system will help to ensure that youth receive treatment, counseling, and education they need to develop into healthy, law abiding adults." (*Ibid*.) Senate Bill 1391, like Proposition 57, seeks to prevent recidivism by emphasizing juvenile rehabilitation in lieu of state prison. Under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers this fourth purpose.

Finally, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers the purpose of requiring "a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) Proposition 57 accomplished this purpose by repealing a prosecutor's power to directly file charges against juveniles in criminal court. Senate Bill 1391 does not attempt to reinstate direct filing. Rather, Senate Bill 1391 "repeal[ed] the power of the prosecutor to make a motion to transfer a minor from juvenile court to adult criminal court if the minor was alleged to have committed certain serious offenses when he or she was 14 or 15 years old." (Sen. Com. on Public Safety, Analysis of Sen. Bill 1391, *supra*, as introduced Feb. 16, 2018, p. 2, boldface and italics omitted.) Proposition 57

took away prosecutorial power to bypass juvenile court jurisdiction by eliminating the direct filing authority. Senate Bill 1391 then narrowed that power further. In this way, both Proposition 57 and Senate Bill 1391 had the same goal: to limit prosecutorial authority to prosecute juveniles as adults.

Moreover, both before and after Senate Bill 1391, a judge, and not the prosecutor, still decides whether to transfer juveniles to criminal court, whenever the prosecutor has the authority to initiate the transfer process. After Senate Bill 1391, the prosecutor continues to make a motion to transfer charged minors age 16 and over and the juvenile court continues to determine whether the minor should be transferred. (Welf. & Inst. Code, § 707, subd. (a)(1) [in certain cases involving minors "16 years of age or older . . . the district attorney . . . may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction"].) Thus, when there is a transfer decision to be made, a judge, and not a prosecutor, still makes that decision. Senate Bill 1391 has not eliminated that procedural scheme.

The District Attorney's Office argues the Senate Bill 1391 is inconsistent with requiring "a judge, not a prosecutor, to decide whether juveniles should be tried in adult court" (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141) because under Senate Bill 1391 a judge can no longer decide whether 14 and 15 year olds can be transferred to criminal court. The District Attorney's Office argues that Senate Bill 1391 is therefore at odds with the specific statutory provisions of Proposition 57 that allow a prosecutor to make a motion to transfer 14 or 15 year olds to criminal court in specified cases. (See Welf. & Inst. Code, § 707, former subd. (a)(1), as amended by Prop. 57, § 4.2 [stating that a prosecutor may make a motion in any case where a 14 or

15 year old was alleged to have committed a qualifying offense].) The District Attorney's Office also emphasizes language in Proposition 57's ballot materials that states that juvenile court judges will decide whether minors should be prosecuted and sentenced as adults and that permit the transfer of juveniles age 14 and older.[1] However, the focus of requiring "a judge, not a prosecutor" (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141) to make transfer decisions was neither to confer new powers on judges nor to ensure that 14 and 15 year olds would continue to be subject to adult criminal prosecution. Instead, the focus of the provision was on restraining prosecutorial discretion and upon ensuring that fewer youths would be tried in adult court. Indeed, immediately after referencing the requirement that judges will make the juvenile transfer decision, the Legislative Analyst focused on the new protections for minors and not on the authority granted to juvenile court judges. (See 2016 Voter Guide, *supra*, analysis of Prop. 57 by Legis. Analyst, p. 56 ["As a result, the only way a youth could be tried in adult court is if the juvenile court judge in the hearing decides to transfer the youth to adult court. Youths accused of committing certain severe crimes would no longer automatically be tried in adult court and no youth could be tried in adult court based only on the decision of a prosecutor. . . . [T]here would be fewer youths tried in adult court"].) Senate Bill 1391 "certainly narrows the class of minors who are subject to review by a juvenile court for potential transfer to criminal court . . . but it

---

[1] For instance, the "Official Title and Summary" included: "Provides juvenile court judges shall make determination, upon prosecutor motion, whether juveniles age 14 and older should be prosecuted and sentenced as adults for specified offenses." (2016 Voter Guide, *supra*, Official Title and Summary, p. 54.)

in no way detracts from Proposition 57's stated intent that, where a transfer decision must be made, a judge rather than a prosecutor makes the decision." (*Alexander C., supra*, 34 Cal.App.5th at p. 1001.) Under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers this purpose because, like Proposition 57, Senate Bill 1391 further narrowed prosecutorial power to try 14 and 15 year olds in criminal court and, when there is a transfer decision to be made, a judge, and not the prosecutor, still makes that decision under Senate Bill 1391.

Of course, eliminating the ability to transfer 14 and 15 year olds to adult court is a change from Proposition 57's statutory provisions and the prior practice, but that change is what makes Senate Bill 1391 an amendment to Proposition 57. Proposition 57 provides that its provisions concerning the treatment of juveniles "may be amended so long as such amendments are consistent with and further the intent of this act by a statute that is passed by a majority vote of the members of each house of the Legislature and signed by the Governor." (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145.)

The District Attorney's Office argues that Proposition 57's amendment clause is a two-part test requiring that any amendment be both "consistent with [this act]" and "further[] the intent of this act." (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145.) The District Attorney's Office argues that because Senate Bill 1391 is not expressly consistent with Proposition 57, Senate Bill 1391 is invalid. However, O.G. argues that we should interpret Proposition 57's amendment clause as authorizing amendments that are "consistent with [the intent of the act] and [that] further the intent of this act." In other words, O.G. argues that the amendment must be

consistent with and further the intent of the act, but does not need to be consistent with the express language of the act. O.G. has the better argument. Limiting authorized amendments to those consistent with the express language of the act, "would appear to preclude any amendment that deletes or repeals any portion of the Act, no matter how consistent such action might be with the purpose of the Act itself." (*T.D.*, *supra*, 38 Cal.App.5th at p. 372.) "[I]f any amendment to the provisions of an initiative is considered inconsistent with an initiative's intent or purpose, then an initiative such as Proposition 57 could never be amended." (*Alexander C.*, *supra*, 34 Cal.App.5th at p. 1003.) The District Attorney's Office's interpretation here would render the amendment clause a nullity. (See *Williams v. Superior Court* (1993) 5 Cal.4th 337, 357 ["An interpretation that renders statutory language a nullity is obviously to be avoided"].)

The District Attorney's Office nonetheless suggests this would not make the amendment clause a nullity because amendments "consistent with" Proposition 57 could still include "minor" amendments to "clarify ambiguous terms, to correct drafting errors in the original language" or adjust procedures. There is no reason to believe that Proposition 57's amendment clause contemplated only the correction of typographical and drafting errors. To the contrary, in enacting an initiative, voters are presumed to be aware of existing laws. (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1048.) Because existing case law had interpreted similar amendment clauses by the time of the passage of Proposition 57, we presume that in authorizing "amendments" that "are consistent with and further the intent of this act" (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145), the voters

intended that authorization to carry the broad meaning defined by case law. (See *In re J.C.* (2016) 246 Cal.App.4th 1462, 1483, 1482 [even though one "plausible reading" of an initiative was inconsistent with subsequent legislation, "an alternat[e] and equally plausible reading" of the initiative "would satisfy the proposition's requirement that any amendment be consistent with and further its intent"]; *Jensen v. Franchise Tax Bd.* (2009) 178 Cal.App.4th 426, 441 ["[I]f the mental health services funding requirements [of Proposition 63] prove too onerous, the electorate or the Legislature may vote to diminish them in the future" without exceeding legislative authority to amend the initiative consistent with and in furtherance of its intent].) In this specific context, it is at least a "reasonable construction" of Proposition 57 (*Amwest, supra*, 11 Cal.4th at p. 1256) to conclude that "consistent with and further" (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145) is simply a means of conveying emphasis — even though this involves surplusage.

Finally, the District Attorney's Office's interpretation — which seeks to read the amendment clause in exceedingly narrow terms — also runs counter to the express language of Proposition 57, which provides that it "shall be broadly construed to accomplish its purposes" (2016 Voter Guide, *supra*, text of Prop. 57, § 5, p. 145) and that it "shall be liberally construed to effectuate its purposes" (*id.*, § 9, p. 146). Both provisions call for broadly or liberally construing Proposition 57's provisions to serve its "purposes." If voters want to specifically limit amendments to clarify terms or change procedures, there are amendment clauses that do that. (See, e.g., Voter Information Guide, Gen. Elec. (Nov. 2, 2004) text of Prop. 63, § 18, p. 108 ["The Legislature may by majority vote add provisions to clarify procedures and terms including the

20

procedures for the collection of the tax surcharge imposed by Section 12 of this act"].) The drafters of Proposition 57 could have explicitly limited amendments to minor clarifications or to procedural changes not affecting transfer eligibility. The drafters could have also stated more overtly a purpose to ensure that judges retain the discretion to transfer some 14 and 15 year olds to criminal court. Noticeably, they did neither.

Arguing that any doubts should be resolved in favor of precluding changes to the initiative, the District Attorney's Office relies upon *People v. Kelly* (2010) 47 Cal.4th 1008 and *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473. *Kelly*, however, involved legislative amendments to Proposition 215 (Gen. Elec. (Nov. 5, 1996)). As stated earlier, the "Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c).) Unlike Proposition 57, Proposition 215 did not contain a provision allowing for legislative amendment of the initiative. (See *Kelly*, at p. 1013, fn. 2.) The issue in *Kelly* was therefore whether the subsequent legislation amended Proposition 215 because, if so, the legislation would necessarily be impermissible under California Constitution, article II, section 10, subdivision (c). (*Kelly*, at p. 1024.) The initiative at issue in *Quackenbush* did have an amendment clause, but the court separately analyzed two different issues: (1) whether legislative changes to the Insurance Code actually amended the provisions of Proposition 103 (Gen. Elec. (Nov. 8, 1988)) and, if so, (2) whether these amendments furthered the purposes of Proposition 103 as its amendment clause required. (*Quackenbush*, at pp. 1483–1494.) Although

the District Attorney's Office cites *Quackenbush* for a standard that would resolve any doubt against validity of the amendment, the cited passage (*id.* at pp. 1485–1486) concerns the same question at issue in *Kelly*, i.e., whether subsequent legislation constitutes an amendment to the initiative. When the *Quackenbush* court addresses the separate question of furtherance of the initiative's purposes (*Quackenbush*, at pp. 1490–1494), it cites *Amwest*'s statement of the standard (*Quackenbush*, at p. 1490) and does not purport to resolve doubts against the amendment. (See *Amwest*, *supra*, 11 Cal.4th at p. 1256 ["[S]tarting with the presumption that the Legislature acted within its authority, we shall uphold the validity of [a legislative amendment] if, by any reasonable construction, it can be said that the statute furthers the purposes of [the] Proposition . . . ."].)

## C. The Fundamental Purpose and Intent of Proposition 57

In considering a challenge to a legislative statute that amends an initiative, we consider not only the initiative's statements of purpose or intent, but also the initiative " 'as a whole. ' " (*Amwest*, *supra*, 11 Cal.4th at p. 1257 ["we are guided by, but are not limited to, the general statement of purpose found in the initiative"]; see *id.* at p. 1259 [construing the "major purposes" of Prop. 103].) In this case, just as the District Attorney's Office's argument fails when reviewing each of

Proposition 57's enumerated purposes, their argument also fails when reviewing the initiative's purpose as a whole.[2]

The major and fundamental purpose of Proposition 57's juvenile justice provisions — as evidenced by its express language and enumerated purposes, the ballot materials, and its historical backdrop and the changes it made to existing law — was an ameliorative change to the criminal law that emphasized rehabilitation over punishment. The impact of this ameliorative change was decarceration that, in turn, would prevent "federal courts from indiscriminately releasing prisoners." (2016 Voter Guide, *supra*, text of Prop. 57, § 2, p. 141.) Our court has already stated that "Proposition 57 is an 'ameliorative change[] to the criminal law' that we infer the legislative body intended 'to extend as broadly as possible' " and that " 'we find an "inevitable inference" that the electorate "must have intended" that the potential "ameliorating benefits" of rehabilitation (rather than punishment) . . . .' " (*Lara, supra,* 4 Cal.5th at p. 309.) "The [a]ct's overriding purpose was to

---

[2]  The District Attorney's Office argues that we may not ignore any of Proposition 57's enumerated purposes by designating one or more of them as "primary" or "fundamental." Designating a major purpose, however, is consistent with our own statements about Proposition 57 in *Lara.* (See *Lara, supra,* 4 Cal.5th at p. 309; see also *Amwest, supra,* 11 Cal.4th at pp. 1257, 1259 [reviewing the available information about Prop. 103 " 'as a whole' " and its historical backdrop before construing its "two major purposes"].) We can properly assess the major purpose or purposes of an initiative. In any event, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers each of Proposition 57's enumerated purposes. Thus, whether we look to the statute's "major" purpose or instead analyze each of its enumerated purposes, O.G. still prevails.

channel more juvenile offenders into the juvenile justice system and to have a juvenile court judge make the transfer decision if one was to be made, not to set in stone the age parameters for such a determination." (*T.D.*, *supra*, 38 Cal.App.5th at p. 374.) Proposition 57's changes to juvenile filing were also consistent with its other provisions that advanced the time at which adult prisoners become eligible for parole and allowed prisoners to be released earlier on parole by earning credits for good behavior. (2016 Voter Guide, *supra*, text of Prop. 57, § 3, p. 141.) All of these measures serve the broader purpose of decarceration.

Senate Bill 1391 is likewise an ameliorative change to the criminal justice system that emphasizes rehabilitation over punishment and serves the broader purpose of decarceration. Like Proposition 57, Senate Bill 1391 focuses on rehabilitation by increasing the number of juveniles adjudicated in juvenile court and decreasing the number of juveniles tried in criminal court. Like Proposition 57, Senate Bill 1391 continued California's return to the state's historical rule on juvenile justice and undid a policy enacted at "a time in California history where the state was getting 'tough on crime,' but not smart on crime." (Assem. Com. Analysis, *supra*, at p. 3.) Senate Bill 1391, accordingly, moves the law in the same direction as Proposition 57 — toward the historical rule placing minors under 16 within the exclusive jurisdiction of the juvenile courts. (Cf. *Amwest*, *supra*, 11 Cal.4th at p. 1256 [striking down an amendment when the Legislature attempted to exempt surety companies from an initiative that had imposed rate rollback and rate approval provisions on them along with other types of insurance].)

The District Attorney's Office argues that Proposition 57 was intended to be ameliorative, but *only to a point*. The District

Attorney's Office contends that the aim of Proposition 57 was also somewhat punitive in nature to ensure that certain 14 and 15 year olds could be tried as adults, and therefore Senate Bill 1391, which is even more ameliorative, is at odds with Proposition 57. But Proposition 57 did not seek to punish juveniles. Instead, Proposition 57 was clearly aimed at providing the " ' "ameliorating benefits" of rehabilitation (rather than punishment) . . . .' " (*Lara*, *supra*, 4 Cal.5th at p. 309.)

Viewed in its historical context, the juvenile transfer provisions of Proposition 57 functioned as a repeal of Proposition 21, the 2000 initiative that had required prosecutors to charge eligible juveniles directly in criminal court if they were accused of specified murders and sex crimes.[3] (See *K.L.*, *supra*, 36 Cal.App.5th at p. 534, fn. 3 ["All remnants of Proposition 21 were deleted by passage of Proposition 57"]; *J.N. v. Superior Court* (2018) 23 Cal.App.5th 706, 710 ["The voters apparently rethought their votes on Proposition 21 and passed Proposition 57 at the November 8, 2016, General Election"].) The purpose of Proposition 57 was to have the electors undo what different electors had done sixteen years prior, not to insulate earlier legislation from future legislative change.

Nothing in the text or history of Proposition 57 suggests that by changing the relevant procedural mechanism from direct filing to transfer hearings, voters intended to ratify the Legislature's decision from over 20 years before to lower the minimum transfer age from 16 to 14, or to preclude the

---

[3] Proposition 57 also effectively repealed a 1999 legislative act that required direct filing of criminal charges against juveniles 16 and older in adult court for select offenses. (Stats. 1999, ch. 996, § 12.2, p. 7560.)

Legislature from revisiting that choice. Similarly, there is nothing to suggest that Proposition 57 sought to endorse the punitive goals of the 1994 decision to expand eligibility criteria to include certain 14 and 15 year olds. (See Assem. 3d reading analysis of Assem. Bill No. 560 (1993–1994 Reg. Sess.) as amended Jan 27, 1994, p. 2 [the intended purpose of the 1994 amendment was "to deal with juveniles committing serious violent crimes who currently hide behind the protections of Juvenile Court law"].) Indeed, the passage of Proposition 57 was a repudiation of the punitive goals behind the 1994 amendment and Proposition 21 — not an endorsement of them. The Legislature's decision in Senate Bill 1391 to further the ameliorative purpose of Proposition 57 by repealing the Legislature's punitive 1994 statutory framework is fully consistent with Proposition 57 itself.

## D. Conclusion

In sum, O.G. merely needs to show that by some "reasonable construction" of Proposition 57 (*Amwest*, *supra*, 11 Cal.4th at p. 1256), Senate Bill 1391 is consistent with and furthers the purposes of the proposition. It does not matter if the District Attorney's Office has a different view as to whether Senate Bill 1391 advances public safety or Proposition 57's procedural scheme. The District Attorney's Office seeks to turn the applicable standard on its head and argues that any doubts whether such a reasonable construction exists should be resolved in favor of precluding changes to the initiative. That is not the standard. We start with the presumption that the Legislature acted within its authority. (See *Amwest*, at p. 1256 ["[S]tarting with the presumption that the Legislature acted within its authority, we shall uphold the validity of [a legislative amendment] if, by any reasonable construction, it can be said

that the statute furthers the purposes of [the] Proposition . . . "].) In this case, under a reasonable construction of Proposition 57, Senate Bill 1391 is consistent with and furthers each of the proposition's enumerated purposes. That is all that is necessary in order for us to hold that Senate Bill 1391 was lawfully enacted. We therefore hold that Senate Bill 1391 is a constitutional amendment to Proposition 57.

### III. DISPOSITION

We reverse the Court of Appeal's judgment.

**GROBAN, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**KLINE, J.**\*

---

\*     Presiding Justice of the Court of Appeal, First Appellate District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  O.G. v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted**   XXX 40 Cal.App.5th 626
**Rehearing Granted**


_____

**Opinion No.** S259011
**Date Filed:**  February 25, 2021
_____

**Court:**  Superior
**County:**  Ventura
**Judge:**  Kevin J. McGee


_____

**Counsel:**

Jennifer Hansen and Willard P. Wiksell, under appointments by the Supreme Court, for Petitioner.

Susan L. Burrell, L. Richard Braucher, Cyn Yamashiro and Marketa Sims for Pacific Juvenile Defender Center and Independent Juvenile Defender Program Los Angeles County Bar as Amici Curiae on behalf of Petitioner.

Michael C. McMahon for California Public Defenders Association and Todd W. Howeth, Public Defender (Ventura), as Amici Curiae on behalf of Petitioner.

Munger, Tolles & Olson, William D. Temko and Sara A. McDermott for Human Rights Watch, Anti-Recidivism Coalition and W. Haywood Burns Institute as Amici Curiae on behalf of Petitioner.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Thomas S. Patterson, Assistant Attorney General, Joshua A. Klein, Deputy State Solicitor General, Anthony R. Hakl, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, for Attorney General as Amicus Curiae on behalf of Petitioner.

Rebecca P. Jones; Bryan A. Stevenson and Alicia A. D'Addario for The Equal Justice Initiative as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Jeff Rubin, District Attorney (Santa Clara), for California District Attorneys Association as Amicus Curiae on behalf of Respondent and Real Party in Interest.

Gregory D. Totten, District Attorney, Michael D. Schwartz, Chief Assistant District Attorney, Tate McCallister and Michelle Contois, Deputy District Attorneys, for Real Party in Interest.

Keiter Appellate Law and Mitchell Keiter for Amicus Populi as Amicus Curiae on behalf of Real Party in Interest.

Kent S. Scheidegger and Kymberlee C. Stapleton for Criminal Justice Legal Foundation as Amicus Curiae on behalf of Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jennifer Hansen
California Appellate Project
520 S. Grand Ave., 4th Floor
Los Angeles, CA 90071
(213) 243-0300

Nelson R. Richards
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 210-7867

Michelle J. Contois
Deputy District Attorney
800 South Victoria Ave.
Ventura, CA 93009
(805) 654-3078